As you both know, we decided to grant panel re-hearing in this case. I think when we originally wrote it, we hadn't had an oral hearing. I think we all think that was probably not a good thing to have done. But anyway, the briefs hadn't discussed the gay. There are a lot of issues and it's very important. I didn't realize, maybe none of us realized, how widespread the effect was until we got one of the briefs that said there are hundreds of people in prison who are going to be affected by what we do. So we're here to hear you out. Thank you for the supplemental memoranda. They were very helpful. Okay, Mr. McColgan. Thank you, Your Honor. My name is David McColgan. I'm the attorney for Amiki Curiae, Federal Defenders of the Third Circuit. Thomas Burke, who is the attorney for Melvin Stinson, has ceded his time to Amiki for purposes of this argument. Is he here? He didn't come? He's not present, Your Honor. Okay. I request three minutes rebuttal time. Granted. Thank you, Your Honor. The queer offender provision in this case raised Mr. Stinson's guideline ranges from the neighborhood of 8 years to the neighborhood of 22 years. And this was dependent on counting his prior conviction for resisting arrest as a crime of violence. Under Begay and under this Court's recent decision in Hopkins, resisting arrest should not be viewed as a crime of violence. But we didn't specifically decide resisting arrest in Hopkins. No. No, it was a similar... But that's before a panel that I'm on at the end of October where we will hear argument directed to the simple assault is before the court. I don't mean resisting arrest. I meant simple assault. I'm sorry. Simple assault, yes. And Hopkins dealt with escape from arrest, which is very similar to resisting arrest. Let me ask a question about, well, actually about both those things. First, the government points out in a footnote in its supplemental memo that if this were to go back, simple assault ought to be on the table, too, when the sentencing judge looks at it. Do you agree or disagree with that? We have no opposition to that being on the table. Our view is that it's clear that simple assault, because it can be committed recklessly, will not count. But if they can produce shepherd documents, that would affect the issue. Okay, so there's agreement to that, at least, if it goes back. Both those things are on the table, right? Yes, Your Honor. Second, in your papers, as you've just alluded to, there is the assertion that under Hopkins, this resisting arrest couldn't be a predicate for a career offender finding, because it's not sufficiently like the crimes listed in the guideline. Examples. Yeah. And that prompted me to think, well, why did we in Hopkins go to the trouble of looking at what actually happened? I mean, there was a review of what actually happened with that walkaway crime. And if it were, in fact, the case, it just doesn't matter, because as a matter of law, it couldn't be the same. Why would the panel have done that in Hopkins? Well, in Hopkins, the court was concerned with which prong of escape from arrest was involved. Was it felony, which requires use of force, or was it misdemeanor two, which doesn't? And they looked to the facts to make sure, the shepherd documents, to make sure that it was the misdemeanor as a second degree, which does not require force. But Hopkins, and also this court in Polk, which was the same panel, I believe, has been very clear that in applying the category of... No, it was a different panel. Polk was different. Polk was different. I was on Polk. Yeah. We three were on... The same panel that's before you today was on Polk. Yes, the same panel. That's what I meant. This same panel today. But not Hopkins. Hopkins was Stapleton and Smith and Judge Sloboda. Yes, that's right. I was on all of them. Yes. But Polk, which is the same panel as today, made clear that in applying the categorical approach, the court should not look to the underlying facts. The court should look to the shepherd documents if they're there. We can't look at the underlying facts under shepherd. Exactly, Your Honor. Okay. Do you think the Pennsylvania statute, we have to look at that as a categorical or as a modified categorical? It makes a difference. Yes, Your Honor. As I use the term modified, and I'm not sure if it's the same sense that the court does, it involves using shepherd documents, which we don't have here. But modified also... I agree with that. I think a modified, that you cannot just look at, as I understand it, that for a modified categorical, you have two prongs and one prong. You can't tell from the language of the prong whether it's a crime of violence or not. Exactly, Your Honor. That's your argument here. And that's what we have in this case. We have two... So you think this is a modified? Yes. We have two prongs, but we don't have the shepherd documents to determine which prong... What do you need them for? If the government is right, and they make a very strong argument in the supplemental memorandum, that under either prong, it's a crime of violence. Yes, Your Honor. So how do you answer that? It's predicated on this fallacy. The mistake of the government's argument is that they that there be a serious risk of bodily injury. But that's not the way the statute's written, and that's also not the way the Pennsylvania courts have interpreted it. I think we've looked at the Pennsylvania cases. I'm not sure you're right. What Pennsylvania cases go separate? I'm sorry. No, that's all right. Thompson, Your Honor, makes it clear that they are written in the... Is Thompson really a case of passive resistance? No. It's resistance that doesn't involve striking out against the police officers. And that's how the court is using passive resistance. And that's how I think it's significant. But normally, we think of passive resistance similar to what was done in the sit-ins and lions in the 60s. That's right. Yes, Your Honor, that... Where people just go limp. And here, there's the interlocking of arms seems to be a very active way of trying to resist arrest, even though it's not lashing out the police officers. And that was the significant difference. It did not involve striking out at the police officers. The defendant argued basically what the government is arguing today, which is that I was not striking out at the police officers. I wasn't acting violently or aggressively towards the police. Therefore, you can't convict... Although the facts in Thompson appear to be a bit more complicated. I mean, wasn't this a case where the woman involved was attempting to scare the police horses? And in fact... She hit the horse. The horse at one point reared up because of her actions. That was a separate crime. She was convicted of that for assaulting a police animal. That was separate. But she began... When the officer confronted one of the Thompsons, she began flailing her arms and hitting the officer. We also read all... I think we read all the cases. And so you do have some physical and they... When they refuse to respond to commands, to release their hands, then they have to pry them apart. I'm not sure why that isn't violent. That's not violence directed at the police, Your Honor. It's considered... The court refers to that as passive resistance. That is simply force that, yes, is being used, but not towards the police. It's not an aggressive... Does your case turn on how the Thompson court characterized what happened in that case? You keep going back to that and saying the court called that passive resistance. But if we read the facts of that case and it looks to us like that isn't passive resistance, are we bound by the characterization that the superior court gave to those facts? Well, two things. No, you're not bound by the characterization, but the court does use broad language, passive resistance. Yeah, but passive resistance, as I understand it, is when the protesters, whatever they're or whether it's abortion, civil rights, they just lie down and the police have to come, the officers have to come and pick them up and put them in the paddy wagon. But you have more than that in this case, right? Protesters could also be locking arms, just like the defendants did in Thompson. Well, that may be more... That may necessarily incur more violence than just lying down. Let me ask you this. Let's assume you're right on Thompson. Isn't that really the outlier? And James, the Supreme Court tells us you need to look at the typical case. We do need to look at the typical case, but what's typical under each prong. It's not for resisting arrest in general. It's what's typical under prong two. We know that prong one is for those cases where there's a substantial risk of bodily injury. So prong two is for those cases where there is not a substantial risk. They don't focus on that. You said they were focused on that. I read their memorandum to focus on substantial force, and that's what I'm interested in your response to. In both prong one and prong two, the resisting arrest statute, according to the government, that there has to be enough resistance that it would require the police to exert substantial force and they claim by definition that wouldn't attach to simple passive resistance. It only comes into play if you've got genuinely active resistance going on, and they turn us to the comment to the model, the statute with this current form. It's an official comment. Note one, is it? Yes, page nine where they say this section changes existing law somewhat by not extending to minor scuffling, which occasionally takes place during arrest. In other words, the intent of the statute is directed at active resistance. What's your response to that argument? The comment doesn't address passive resistance, for one thing. It addresses minor scuffling. For another thing, that comment has never been cited by the Pennsylvania courts. What we have instead... Minor scuffling, wouldn't it necessarily not attach to passive resistance where you don't do anything? Not at all. I'm using passive resistance in the sense that Thompson uses it, which is to refer to people who are locking elbows, and there is force that is required to overcome that. I had sort of thought, and you can help me with this, that there'd be a scale of things that you'd have maybe go limp, and then your definition of passive resistance, which involves, I may not be limp, but I'm just sitting here with my legs and arms around my buddies. And then something above that, which would be minor scuffling. I'm not just sitting here with my arms and legs around my buddies. I'm smacking you, or I'm doing something. I'm messing around with you in an active, more active way. And then above that, really a very violent guns blazing kind of stuff. Now, that's the scale that I kind of had envisioned that people would agree was going on. But are you telling me that you think that minor scuffling is somehow less aggressive than the passive resistance you've been arguing about? No, passive resistance is inherently not aggressive and not violent. But minor scuffling is something different. That would be, police officer comes up to you, tries to grab you, you pull away, but then they manage to grab a hold of you. That's not passive resistance that requires substantial force to overcome, and it's also not creating a serious risk of injury. Are you familiar with the Pennsylvania Superior Court's decision in In re Woodford? No, Your Honor, I'm not. 1992. Well, in In re Woodford, a teenager burglarized a parked police car in his neighborhood. The officer, who was off duty, viewed him upstairs. The teen leaving the interior, ran out, laid person's clothes, told the teenager he's going to lock him up for breaking into the officer's car. Teenager ran away, ascended the porch of his home, and the officer grabbed the teen by his jacket, and you can turn off the red light because we're going to go on until we're satisfied, and punched him in the face. At that point, witnesses came trying to pull the officer away from the teenager. Another one even tried, okay. Soon other officers arrived, and the officer told them he had been jumped. The teen that approached the doorway of his home taunted the officer, in a fit of rage, the officer charged into the home, seized the teenager. He was adjudicated delinquent for attempted theft and resisting arrest. The Superior Court vacated the resisting arrest charge, finding that the officer created a dangerous situation for himself when he chose to vent his personal anger, and that the Commonwealth did not present sufficient evidence that the teenager created a substantial risk to the officer or anyone else. Now, I read that case as saying that in order to resist arrest, you have to do something more than that kind of, you know, you can't get a hold of me, and I'm going to get off, which is, I think, illustrative of the government's argument that both prongs fall within the, will cause, may cause violence. But then prong two is superfluous. Prong two is pointless if it too requires, if the government argues, a serious risk of bodily injury. And we know that a statute should not be run in that way. Well, the second one is substantial. The first one is substantial risk of bodily injury. The second one is, as Judge Jordan noted, requiring substantial force to overcome the resistance. But that's forced by the police, not by the defendant. So it's not forced against the police, it's forced by the police. I understand that, but the government's argument that, I'm hoping, and I realize we're peppering you with a lot of questions, so. We have a lot of questions. But what I'm trying to get you to speak to is, their assertion is the word substantial force mean there has to be active resistance. Because without active resistance, you wouldn't need substantial force. That's the pitch they're making. But it's, even if it. What's the flaw in that logic? The flaw in that logic is that even if it is active resistance, it's not active resistance that is necessarily creating a risk of serious bodily injury to the police officer. Because that's prong one. But that's not what the prong says. It says employees means justifying or requiring substantial force to overcome the resistance. That's the language. What are you looking to in 4B1.2a? Now you're back. What are you looking to in 4B1.2a that makes you say, it has to involve a substantial, or the language you just used? That's the language in A2, which is, otherwise involves conduct that presents a serious risk of physical injury to another. And this court, in the original panel decision, quite accurately noted, that's essentially prong one. They're the same, which is substantial risk of bodily injury. That's the same as serious risk of bodily injury. So we know that prong one of resisting arrest speaks to that risk of injury. Then it says or, and then it says requires substantial force to overcome resistance. Prong two must not be requiring that substantial risk of injury, because if it did, it would be superfluous. Now, but to make that pitch, you have to, we would have to agree I mean, there's a sort of an algebraic formula you're putting in front of us here, which is in the original panel decision in this case, we said that prong one is roughly equivalent to the 4B1.2a language. Yes, Your Honor. And that, and then you're saying that if that's true, A equals B, and then we say that substantial force also would qualify under 4B1.82, then that must mean that, in other words, C equals A. Am I making sense here? It's sort of like, you're saying A equals B equals C, and therefore it's all superfluous. But I'm wondering if you've taken it too far when what we said was in the original panel, not necessarily that 4B1.2a's language is exactly the same as the first clause, we just said it was enough for us to say it is aggressive and violent. I mean, your argument requires an equivalency, doesn't it? And can you say we really were making an equivalency statement in that panel opinion? Well, it's been, I mean, the Court is rehearing it anyway, so I don't know as it's binding, but I think the Court accurately stated that Yes, Your Honor. But I think the Court is accurate in saying that those are equivalent phrases. There's no meaningful distinction between a substantial risk of bodily injury and a serious risk of bodily injury. Substantial and serious, there's just no meaningful difference. All right, well, where does that take you? That's prong one. Prong two, which is in the We're talking about 4B1, or you're talking about the statute? I'm talking about the resisting arrest statute. Yeah, the 5104. Are these really two variations on the same theme that you have to have, as Judge Jordan noted, purposeful, aggressive, and act, you know, conduct? And if you have that, you qualify. But the holding of Thompson is that there doesn't have to be any aggression towards the police, and saying that it can be passive resistance, even though that's not the same sense that the Court would use. But there was aggression in that case. For separate offenses. But what they were looking at in terms of this resisting arrest, they focused in particular on the interlocking of arms. And the defendant argued that I never struck out towards the police. But I repeat, even if you were right on Thompson, isn't what we look to under the Supreme Court's 2007 case in James at the typical case? Yes, and in looking at the typical case, we have to look at the elements. According to James, it's bound by the elements. What are the elements of what I'm calling prong two of resisting arrest? Prong one is what applies when there's a substantial risk of bodily injury. So prong two, in order not to be superfluous, applies to those cases where there's not a substantial risk of injury, but the defendant is using... And what the three of us are saying to you, what if it's purposeful and aggressive in prong two, just as it's purposeful and aggressive in prong one, and that's the way we interpret it? Because that's essentially the government's argument, which reads prong one into prong two, which is the substantial risk or serious risk of bodily injury. If you're reading that into prong two, then you're making prong two superfluous. I think we should hear from the government now. Is that all right? That's fine. Why don't we hear from the government now, and then you'll be able to answer. And so we'll know where we've joined. Thank you, Your Honor. Thank you. Good afternoon, Your Honors. May I please the court? Robert Zosmer on behalf of the government. Mr. Zosmer, I have... I've been waiting to ask you this question. It's going to take you through several steps. All right. Prong two of the Career Offender Guideline, 4B1.2, lists examples. Burglary of a dwelling, arson, extortion, involves use of explosives. Those are the examples. Or otherwise involves conduct that presents a serious potential risk of physical injury to another. Now, the question, of course, is whether the Pennsylvania resisting offense fits within that prong. There are two clauses to 5104. The person creates a substantial risk of bodily injury to the public servant or anyone else. Clearly, that falls within 4B1.2. Or employs means justifying. And that's a little different. Employees means justifying or requiring substantial force to overcome the resistance. Now, arguably, looking at just the language, the government's right. But I have a problem with Begay. Because Justice Breyer says in Begay, we should read the examples as limiting the crimes that Clause 2 covers to crimes that are roughly similar in kind as well as in degree of risk posed to the examples themselves. Now, Justice Scalia concurs because he doesn't agree with the in kind part. He agrees with the degree of risk. And the three people, three justices, dissent entirely. But I want to ask you, why is resisting arrest roughly similar in kind to the examples which are arson, burglary, use of explosives? What is similar about resisting arrest? Because it's not just, let's assume the degree of risk may be the same. Which is what Justice Scalia's concurrence would look at only. But you have to look at the majority. And they say it has to be similar in kind. How is it similar in kind? What is similar in kind, Your Honor, is that the offense involves likely physical conduct that involves a significant risk of physical harm. And what's important in Begay is that the court doesn't just, importantly, says what Your Honor quoted. But it goes a bit further in explaining what it means. And that's where that key line comes in, where it says it means what's similar in kind is purposeful, violent, and aggressive conduct that is what Chambers then says, quote, potentially at issue. That's what it means. And that's what we're looking for and many courts have since been looking for. But that's degree of risk. That's not the in kind. See, I think they all agree, well, except for the three dissenters. They all agree that degree of risk is an issue. But I'm stuck on the in kind. What is in kind? I mean, when I asked you what in kind means, you said it means degree of risk. Well, I don't think I'm saying that, Your Honor. Because to say purposeful, violent, aggressive, that's not just degree of risk. That is the kind of offense that the Supreme Court is talking about. It cannot be, Your Honor, I understand the argument. But it cannot be that the definition has limited crimes of violence to these four acts, burglary, arson, extortion, and use of explosives. Or things in kind. Exactly. But what is resisting arrest similar to burglary in kind? Resisting arrest, Your Honor, I would suggest is particularly under the Pennsylvania statute, which is what we're concerned with, actually more frequently poses a risk of harm and physical injury than the enumerated offenses. But that's what Scalia would say. He would say, leave out the in kind. He would say, only look at the risk. But that's not what the majority held. They didn't agree with it. But even in terms of the type of offense, we're focused here on physical injury or the potential of physical injury. And in terms of the type of offense, resisting arrest under Pennsylvania law poses that possibility more frequently, certainly than burglary or even extortion. Doesn't your argument, though, Mr. Zosmer, actually step directly into Mr. McColgan's assertion that that renders Clause 2 of the resisting arrest statute superfluous? If you say the thing that makes it similar in kind is it's aggressive, it's violent, it's purposeful in all those ways. And we did say in the now vacated panel opinion that looking at Clause 1, that's what's like 4B1.2a. If you say that, well, Clause 2 is just like that, too, then what was the point of the Pennsylvania legislature writing Clause 2? Well, I think that's fairly clear, Your Honor. First of all, when Pennsylvania adopted the form of this statute in 1972, they were not They were concerned with prohibiting resisting arrest that posed a risk of harm. And there's nothing wrong and there's nothing superfluous about crafting a statute to make sure that you've addressed all the possibilities. The first clause says that the person cannot create a substantial risk of physical injury. And thus, you could see the legislators could contemplate, all right, well, what if the defendant says, I wasn't specifically doing the physical injury. I was just doing something bad that caused them to come after me and pose risk to others. And Pennsylvania then says, we're going to cover that also. There's not an exact overlap between these two clauses. But we're here for an entirely different purpose. We're here to apply the career offender definition to both clauses. And it happens they fit both clauses. So I don't accept the argument that in any way makes it superfluous. It happens that what Pennsylvania was clearly aimed at was any conduct that posed a risk, not just to police officers, but members of the public and probably even the suspects themselves when resisting arrest is taking place. I don't know whether suspects themselves come into this because it says, or otherwise, another person. So I wondered about whether if they did something that meant violence to themselves, that would be covered. And I don't think it's covered under the language. That may be, Your Honor. And I haven't actually thought that through very carefully. It's just very clear that both prongs involve a serious potential risk of physical injury to someone. Usually the police officer or a standerby. Or a bystander, of course. And that is what's covered by both. They are not duplicative clauses. But they certainly both meet the definition that we're concerned with here. To accept your argument, we would have to accept that the language about substantial force is the legal equivalent or pretty darn close to meaning the person involved in resisting has to be engaged in purposeful, violent, or aggressive behavior. Well, that's right. Your argument is if it doesn't take substantial, that in order for it to qualify as requiring substantial force, it has to be that the resistance is purposeful, aggressive, or violent. Right? It has to typically be that under the Supreme Court cases. Right. Right. So what is it, except for your supposition, that should lead us to say, well, you know what? That's true. In the typical case, to require substantial force, the resistance has got to be aggressive, purposeful, violent. Well, first two-part answer, Your Honor. First part is there's another part of this resisting arrest statute that applies to both progs. And that is the defendant has to be acting with the intent to resist arrest. To resist an order of a law enforcement officer. So right off the bat, we're starting with purposeful conduct. And the next thing we know is that the person has to be employing means justifying substantial force. So again, we have somebody who's- That's the second part. Right. That's in the second part. So we have somebody who's acting purposefully. And what is it that could require substantial force? You're right. I am offering a supposition to the court of how this case is proven, backed up by Pennsylvania law, as Judge Sloboda was referring to. And that is what the courts have to do in this situation. That's what the Supreme Court in James went through all sorts of scenarios of how attempted burglaries get committed and reached its suppositions. Mr. McGonigal's given us an example. He says- McColgan. McColgan. I'm sorry. I'm sorry, Mr. McColgan. My apologies. Your opponent. He says- My friend. You can have people- Mr. McColgan argued poorly in the Supreme Court of the United States. Go ahead. Very good. That they're all linked with arms and lay in there. And one guy can't manage that. It takes a substantial degree of police effort to get in there, break them apart, put them in the paddy wagon. But that that's not aggressive. It's not violent. It is, in a real sense, passive because they're not striking out at anybody. They're just making it difficult for the police to deal with. Now, that's the hypothetical that he poses to us. Why is that far-fetched? Or why wouldn't that be something that we would look at and say, you know, that strikes us as at least as typical as the person who's resisting with overt violence? Well, that example, Your Honor, our view is, and this is squarely the issue before the court, that example is purposeful, violent, and aggressive conduct. And you just have to look at the Thompson case to see that. You have these people who are locked together. They are violently resisting the police. It takes- Well, they're purposefully resisting the police. Well, purposefully- I'm not sure you could say they're violent. You can't when you say they're violent. Well, but it becomes, if I may say, Your Honor, it becomes violent. We know from that case- It becomes violent. But that's the step you're wanting us to take that they're telling us we can't take. And that's the question that I got to push you on a little bit. When we're talking here, well, when Judge Slobiter says, how's it the same in kind? If you acknowledge that that could be in the realm of typical resisting arrest, how can it be said that a bunch of protesters laying on the ground with their arms linked is the same as arson or burglary? Well, but they're not. I mean, everybody- Well, we're not. What we're saying is that when people are locked together like that and resisting the efforts of the police to unlock them, to take them apart, that is violent. That gets violent. The police have to- and aggressively. And in that case, Thompson, as we know, they used pepper spray, which certainly causes a potential risk. I feel like we're getting equivocal here. And you're saying it gets violent. Isn't the law that we have to deal with focused on people who are violent, not on police response that may have to be violent, but on people who are behaving violently? Well, maybe not. To cause the police response. Well, maybe not. Let me just add to this because we haven't pointed this out. The second prong of 5104 doesn't say just requiring. Employees means justifying or requiring. So arguably, if they lock together and that justifies violence, even if they actually haven't done it, you may fall within the second prong. At least I raised the question. Sure. Indeed, you may fall within the second prong. But the more important question to me is whether falling within that second prong necessarily puts you within 4B1.2a. And that's what I'm trying to push you on, Mr. Zaza. You're saying that that is violent because it may produce violence from the police. And I'm asking you, as a matter of law, under 4B1.2a, is it enough to say I made police violent, therefore I was violent? And the answer is yes, Your Honor. And also the other... What's your law for that? Well, my law for that starts with the language of 4B1.2, which says a serious potential risk of physical injury. And the Supreme Court was explicit about that in James. There is no requirement to show that there is always violence and always danger. And what I'm suggesting to the Court, when we do compare to the other enumerated offenses, resisting arrest by its very nature is more likely to result. Even though we don't only need a potential risk, it's more likely to result in physical injury than, say, burglary. Whereas we know most burglars do not try to confront people. Most burglars try to do their work when no one is around and don't mean to confront anyone. And this is the type of analysis that the Supreme Court very carefully did in James and then again in Begay and Chambers. And when we analyze it in the way the Supreme Court has now directed us to, we see that this typical offense of resisting arrest, either by intending physical injury to someone or requiring substantial force, is typically posing this potential risk, probably more often than some of the enumerated offenses. What's the difference between Clause 1 and Clause 2 of 5104? Well, the difference is, one, the person creates a substantial risk of physical injury, I guess, just from the get-go. Whereas the second prong is he employs means justifying or requiring substantial force. You're just giving me the words of the statute. Well, but what I'm saying is that... It ruins the practicality. Well, sure. Give us an example of something that would fit into one that wouldn't fit into two or the other way around. Well, I think that the Thompson example is actually a very good example. In Thompson, if the people just remain determinedly locked together by itself, that is not going to physically injure someone else. But it does justify, because the police have the duty to arrest, it does justify the police using substantial force. And that then creates the risk. But then you might come full circle back to Judge Jordan's point. How does that result in the potential of serious physical injury? And that's where the court has to apply its logic. When law enforcement is using substantial force, there is a serious risk of potential injury. That's what we stand on. In Thompson, what was the risk of injury? Oh, well, certain people... This officer might slip and might turn his ankle or something? Sure. Officers could hit each other as they're trying to pull people apart. And then when pepper spray is deployed, people get hurt. People go to the hospital, be treated for that on a fairly frequent basis. No, but that's the serious potential injury to the officers in this case in Thompson, not to the husband and wife who were protested. Well, that's right. But that suffices under the statute. And it certainly suffices under the crime of violence definition. And even if you did have a police officer inadvertently, usually they go and protect it. But let's say inadvertently one of them gets sprayed. Is that serious physical injury? If what happens during a burglary? If there's pepper spray used, usually the police officers are protected. But let's say one of them isn't, and he happens to get a whiff of that, and he begins coughing. Is that serious physical injury? I would think so. I don't think we have to answer that question so specifically. James makes clear we don't have to address every possible scenario. We have to look at the crime in its generic form and say, is this a violent crime? The other thing I would add, and so I can't answer specifically in every use of pepper spray, just like I can't answer in every burglary what the homeowner does on one occasion versus another. The important thing is that there is a serious risk of physical injury. The other thing that Begay says, and this gets back to Judge Slover to your first question, which is, how do we define what the Supreme Court's talking about here? The degree in kind as well as in degree of risk. And one of the other really helpful things that the court says in Begay, besides giving us this definition of physical and violent and aggressive, is they say that it's a crime that's potentially more dangerous when firearms are involved. That's a very sensible way to look at things, because what we're trying to do here, after all, is assure longer punishment for violent career criminals. And so it's a logical question to ask, in looking at the person's record, has he shown in the past that things would be worse if he had a gun, because we now know that he's not following the law against possessing a gun as a convicted felon. And that's where the Supreme Court in Begay and in Chambers says, well, driving under the influence, no. We can't say, as a general typical matter, that driving under the influence gets worse when someone has a gun, because the gun just isn't used. Similarly, a failure to report escape, which is like Hopkins and Chambers. Someone who's failing to report is not trying to see anybody. They're not trying to be in confrontation with anyone. Resisting arrest, would that be a worse offense if a gun were available? The question answers itself. I mean, that's a very good question. You're saying the answer is yes again. Yeah, it may, but it doesn't seem like a very practical response to the, since we're not talking about that here. What we're talking about is, at least from the perspective of the Defender's Service, is active versus passive resistance, a point that they will, no doubt, go back to when you sit down and your colleagues and friends stand up. What will be likely pressed upon us is that there's a difference between violence and nonviolence, even if nonviolence provokes violence. So that I'm clear, your argument depends upon accepting the notion that anything that requires substantial force, in the typical case, will involve active resistance. Absolutely. And, Thompson, the Court may have used the term passive resistance. That was not passive resistance. And there is no case that we have found, where it's been cited to this Court, in which, under Pennsylvania law, which is what we're concerned with, in which truly passive resistance has been held to violate this statute, this resisting arrest statute. That's critical. That's where our argument rests. We would agree that if a statute, and we cited a few from other states in our brief, if a statute truly covered truly passive resistance, the 1960s protester lying down on Market Street in front of the courthouse. The abortion protesters. The abortion protesters, absolutely. If it covered that, we'd have to go back to the District Court and we'd have to show exactly what part of this statute the person was convicted under. But here, there's no part of this statute that punishes passive resistance and no example has been shown to this Court in which Pennsylvania courts have punished someone for that. That's the critical argument here. What's the practical upshot? As Judge Holder started by saying, we were advised by the METU that this is going to affect a whole lot of folks. So why don't you tell us the government's view of the practical fallout of ruling in the way you're suggesting? The government's view is I don't know. I respect my friend's statement, but I don't know what data that's based on. We do not keep data. What we would need to know is how many two career offenders do we have where one of those offenses is resisting arrest. We don't keep that data. And I'll also tell you, Your Honor, that most of the career offender cases I see, and at least I see all the ones that come on appeal from our district, involve more than two predicate acts. Well, we had that here. That's right. But we weren't sure about the third. Right. And we have an issue with the third, which we could go back on, but we don't think that's necessary. So my guess, Your Honor... We have to decide in another case. My guess, Your Honor, is that saying hundreds is probably an overstatement, but I can't honestly represent the answer to that. I think I read that in the amici brief. And they may have data to support that, but we have not tracked that. And I can't tell you the answer. Do you have any more questions? Do you have any? Okay. Thank you very much. Thank you, Mr. Zelsner. Mr. McAldin. Thank you, Your Honor. If I can just jump right to the phrase passive resistance, if we could set that aside, our argument does not rest on adopting the word or the phrase passive resistance, because subsection two also covers what I'm calling prong two of resisting arrest, also covers active resistance, but active resistance that doesn't rise the level of prong one in terms of creating a substantial risk of bodily injury. That's what prong one is for. So prong two is for those cases where there is not that substantial risk, but there is... Well, but prong two involves... Employs means justifying. I mean, isn't that the big difference between prong one and prong two of the Pennsylvania statute? Yes. That in prong one, the person actually does something that creates a substantial risk, and in prong two, the person defendant has employed means justifying, not necessarily requiring, justifying substantial force, even, I assume, if the person didn't actually get to the prong before that, just did something which would justify, like locking arms. That's right. But substantial force by the police doesn't meet the requirement of queer offender. Why not? Because that's by the police. It's not by the defendant. It's not creating a substantial risk of bodily injury to others. No, but if you look at crime of violence, it says, or otherwise involves conduct that presents a serious potential risk of physical injury to another. To another, right. Yeah, all right. And the other can be the police also. Right, but if the police are using- The non-defendant. Yes. Who is, I think, that prong. But if the police are using the substantial force, that's not a substantial risk of injury to the police, maybe to the defendant. Police get injured all the time while they're affecting arrests because once something turns violent, stuff happens, doesn't it? That's sort of getting to a powder keg theory that anytime there's an arrest, there's a potential. But the fact that there's a potential, that's- Not anytime there's an arrest. Anytime there's resisting arrest. That's the government's point. That by definition, you've got people who are resisting lawful authority. And in resisting, when the lawful authority exerts itself, there will likely, in the typical case, be violence. That's the argument they're putting to us. And what's wrong with that argument? If there's violence coming from the defendant towards the police, or if it's creating a substantial risk, then it's covered by prong one. You don't even get to prong two. Prong two is for those cases where there is not the substantial risk of bodily injury, but there is substantial force by the police that's required. It's similar to Hopkins- I don't understand your argument. Frankly, I'm sorry, Mr. McAldin. Why, if a person who's being arrested does something that presents a serious potential risk of physical injury to another, that to another must mean to someone other than the person being arrested. I mean, by definition. Yes. So why isn't that enough? I don't understand what you just said. That would be enough under prong one, but prong two is where that's not present. I'm reading from prong two, or otherwise involves conduct. I'm talking about 4B12. I'm not talking about the Pennsylvania statute now. Yes, Your Honor. The career offender, the crime of violence requires that there be serious potential risk of injury to another. If we look at the statute- Or otherwise involves conduct. Or otherwise involves conduct. If we look at the Pennsylvania statute, it's only what I'm calling prong one, which potentially creates that substantial risk of bodily injury. Prong two of the Pennsylvania statute- Yes, employs means justifying or requiring substantial force to overcome the resistance. I don't know why the language doesn't fit right into 4B1, the prong. Your theory- Well, go ahead. You state your theory. Because that's substantial force by the police. It's not substantial force by the defendant. And it's not force against the police. It's not creating a risk of injury to another. The fact that the defendant- The police don't fit into the to another, according to you? If it's risk of injury to the police, yes. But if it's substantial force by the police to overcome resistance, the risk is not to the police. It would be, if anything, to the defendant. In any event- Your assertion, of course, requires the assumption that there aren't injuries that flow from fighting back against lawful authority, even if that fighting is as- fighting may be the wrong word to use- even if that resistance is as simple as everybody locking arms. If there were, then that would be what I'm calling prong one of the resisting arrest statute, which requires that substantial risk. Prong two is for cases where you don't have that. In any event, even if there is a risk, still, it's not a risk that is equivalent to what you get with burglarizing a house or arson, extortion, blowing up a house. Now, that's another point that- Yeah, excellent point to address, if you would. Because Mr. Hosmer says, look, I'm paraphrasing a little bit here, but I understood him to be telling us, you're a lot more likely to have a violent confrontation by resisting a police officer who's right there trying to take you into custody than you are if you're a burglar who's done a good job of casing a joint to see if there's nobody there. You go in, you break in, you're gonna get something. If you did your job right, you're not gonna bump into somebody and there may not be violence. You're, by definition, gonna be involved in violence if you got a police officer right in front of you and you're telling him, in effect, drop dead, I'm not going with you. That you're more likely to have a bad outcome with resisting arrest than with burglary. So it's burglary plus. Why don't you rebut that? Well, again, that would be under prong one. That's somebody who is fighting aggressively against the police. But under prong two, where it's that resistance- So your entire argument, because we keep going back to this prong one, prong two, I take it that your entire argument is pinned on the assertion that anything that provokes violence, by definition, has to fit under prong one, can't be under prong two, and because there is a prong two, it must cover something somewhere that's not violent. And if that's the case, why don't you have any Pennsylvania law to show us except this Thompson case? Well, we also have Trago, which is cited in the rehearing petition, where the court expressly said that under prong two, there's no requirement of substantial risk of injury to another. And the court was explicit about that. But in any event, if we look at resisting arrest, if I can step back from that argument for a moment and just look at resisting arrest, where there is substantial force that's required to overcome, that's substantially different than a burglary where you have an actual harm to the property of another, which you don't have in resisting arrest. Mr. McCaulgan, I ask Mr. Zausner this, I don't think I asked you, what's the difference between, what would fall within prong one and not fall within prong two, or what would fall within, and the Pennsylvania statute, what would fall within prong two that wouldn't fall within prong one? What would, an ideal example of prong one of resisting arrest would be somebody who in the process of arresting is fighting out against, punching the police officer, punching him in the face, punching him in the nose, striking out. What this defendant actually did, according to the PSR, right? Well, no, that's actually not what the PSR says, but that's a, but that would be an example. This is a hypothetical. This is a hypothetical, prong two. You mean, if somebody comes to arrest Judge Jordan, and he kicks out and does some things, that would be, with punches, that would be resisting arrest that falls within prong one. Now, what would fall within prong two, which is the employing means justifying or requiring substantial force? Prong two, I would go to the Thompson example. That's locking elbows. If I lock elbows with Mr. Zausmer, and the police are trying to arrest me, and where elbows are locked together, the police have to use force to pull our arms apart, but I'm not striking out at the police, that is, we could call that active resistance. Let's avoid the phrase passive. Active resistance, but it's not creating a risk of injury to the police, or not a substantial risk of injury. That's an example. The substantial risk comes in the 4B1, but. Yes, and that would be required to be a career offender, to be a crime of violence. It's also required under prong one of the resisting arrest, but under prong two, there's no requirement of substantial risk of injury, and if we're simply locking elbows, then we're not creating a risk of injury to the police. If you employ, according to the language, if you employ means justifying, leave out the requirement, justifying substantial force to overcome the resistance, by definition, aren't you creating a substantial risk of injury? No, I don't think you are, Your Honor, because again. I didn't think you'd say yes. Again, if what's required is, you know, my elbows are locked with somebody else, and the police are pulling them apart, that's not creating a substantial, the police have to use force to overcome that, but it's not creating a risk to the police, a substantial risk of injury to them. Why not? A substantial risk to a fellow protester, is that another? If I've locked arms with somebody else, and that kind of active resistance, even if I'm not injured myself, but my fellow protester is injured in the process, does that other person not count as another? Your Honor, I don't even think it creates a substantial risk to the other protester. If what's required is to unlock the arms, the other protester always has the option of unlocking his arms, too. So, you know, they can. But what about if you hurt the back? I mean, if you physically have to pull away, I mean, I'm sure the Philadelphia Police Department gets all these cases where their officers say, I have to go on disability because I hurt my back, because I have to do something to arrest somebody, and I'm, that's a big problem with Philadelphia and the pension, but leave that aside. I mean, they do that. I mean, we've seen those cases. Yes, Your Honor, but to compare this misdemeanor as a second degree in seriousness, even if there is a risk of injury. Doesn't matter what they call it, as we know. But to compare this to burglary, arson, or extortion, that is a far cry different. Those are very different offenses, from blowing up a house, burning down a house, burglarizing a house, it's very- Well, the extortion, you know, I wondered about the extortion until I read more carefully, and the extortion, it says, you know, often by force or something. That's right, it's frequently- I mean, look at, what's his name? Letterman. Thank you, that's his name. You know, that's, they're charging the woman, the man, with extortion. He hasn't used force. Right, but all of those cases involve harming, if not the person, at least the property of another. Resisting arrest, particularly under prong two of resisting arrest, does not. That's how it's different. Well, this panel, in fact, in Polk said, I'm sorry, Your Honor. Well, in Polk, we were interpreting just mere possession as distinguished from use, and we decided that there was a difference. Go ahead, I'm sorry. The, again, active versus passive in that case, but what's the best you can hope for here? Your Honor, a remand so that these issues- So this would be flushed out under Shepard? With Shepard documents in the district court. What documents would you think would be relevant if we remanded it? I think Shepard documents on simple assault to determine whether it was intentional, and I think Shepard documents on resisting arrest as well, if the government is going to argue- Well, no, on resisting arrest, leave out simple assault. On resisting arrest? Yeah, I mean, what would show? I understand from the district judges with whom I usually eat lunch, that what happens is somebody gets arrested for resisting arrest, and they're in jail for a month or so, and then the judge says, okay, time served, and you never get a charge or anything like that, which would be a Shepard document, and it just goes away. What would you expect to get? Well, there may not be documents, but if there are documents, there's some cases, for example, where people were only charged under prong one. They were not charged under prong two, or vice versa. So it is possible for the charging document to indicate that it was in some way limited. Here, we have no indication. There should at least be a remand to see if the charging document limited it to prong one, where the government has a stronger argument. But you agree that if we agree with the government that either prong fits within the crime of violence, we don't remand? That's correct, Your Honor. But that's predicated on the government's theory that either prong requires a serious risk of injury, and that renders prong two superfluous. And that's why that- I don't know. Can I ask a question about the practical effect? Your argument in seeking MECA status here was that this has broad-ranging effects on people. Tell us what those effects would be. What would be the consequence of the court ruling in the government's favor against you on the legal point that we've been discussing today? The consequences are dramatic, Your Honor, in that just based on our experience, we don't have statistics. But just based on surveying our office, there's many of our clients who do have resisting arrest convictions. It's a fairly common conviction to be included in somebody's criminal record. And if that simple arrest is enough to qualify as one of the predicate offenses, to, for example, in this case, boost the offense from the sentence from eight years to 22 years, that is a draconian increase. And for so many of our- But they have to have had another drug or another crime of violence. So if a person has two resisting arrests or one drug and one resisting arrest- Have you really ever seen two resisting arrests? Resisting arrests is a fairly common- Yeah, but usually it's a second of the- Usually it's drugs. Often it's drugs, yes, Your Honor. But it certainly makes a huge difference if that's the second triggering offense. In this case, it makes all the difference. But, of course, your argument that all these people would be adversely affected depends on the assertion that all these people were of the second prong type of resisting arrest folks by your definition, right? We should take a look to see whether they were. There should be Shepard documents that determine whether it was first prong or second prong. What happens if you can't find Shepard documents? When do you defend it, right? The burden is on the government. The government is seeking this draconian enhancement. They're the ones that have to prove it up.